<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| JASON DUNCAN, : | Civil Action No. 19-6304 (SRC) |
| Plaintiff, : |  |
| v. : | **OPINION** |
| COMMISSIONER OF : |  |
| SOCIAL SECURITY, : |  |
| Defendant. : |  |

**<u>CHESLER, District Judge</u>**

This matter comes before the Court on the appeal by Plaintiff Jason Duncan ("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled under the Social Security Act (the "Act"). This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and, having considered the submissions of the parties without oral argument, pursuant to L. CIV. R. 9.1(b), finds that the Commissioner's decision will be affirmed.

In brief, this appeal arises from Plaintiff's application for disability insurance benefits, alleging disability beginning April 29, 2015. A hearing was held before ALJ Douglass Alvarado (the "ALJ") on September 12, 2017, and the ALJ issued an unfavorable decision on November 16, 2017. Plaintiff sought review of the decision from the Appeals Council. After the Appeals Council denied Plaintiff's request for review, the ALJ's decision became the Commissioner's final decision, and Plaintiff filed this appeal.

1

In the decision of November 16, 2017, the ALJ found that, at step three, Plaintiff did not meet or equal any of the Listings. At step four, the ALJ found that Plaintiff retained the residual functional capacity to perform medium work, with certain limitations, including a limitation of use of the right hand to occasional handling and fingering. At step four, the ALJ also found that this residual functional capacity was not sufficient to allow Plaintiff to perform any of his past relevant work. At step five, the ALJ determined, based on the testimony of a vocational expert, that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity. The ALJ concluded that Plaintiff had not been disabled within the meaning of the Act.

On appeal, Plaintiff argues that the Commissioner's decision should be reversed and the case remanded on two grounds: 1) at step five, the testimony of the vocational expert ("VE") confirmed Plaintiff's disability; and 2) at step four, the residual functional capacity determination is not supported by substantial evidence.

At step five, the ALJ held a hearing and heard testimony from a VE. Plaintiff does not challenge the formulation of the hypotheticals posed to the VE. The first hypothetical did not include a limitation to the use of the hands, and the VE stated that there were three jobs that a person with those limitations could perform. (Tr. 76-77.) The ALJ then presented the second hypothetical:

> If the hypothetical individual [in] the hypothetical number one could occasionally handle and finger with the right dominant hand, would the jobs that you offered in hypothetical one still exist?

(Tr. 77.) The VE responded that the jobs would exist, but that the availability of such jobs

2

would be eroded by 50% because of the additional limitation. (Tr. 78.) After the VE completed his testimony, the ALJ asked Plaintiff's counsel whether counsel had any questions for the VE, and counsel responded that there were none. (Tr. 79.) Then the ALJ asked the VE one last question:

> ALJ: And, Mr. Pearson, has your testimony been consistent with the Dictionary of Occupational Titles?
>
> VE: Your Honor, it has been consistent, but I did note where the DOT doesn't provide guidance that pertinent to the restrictions associated with one upper extremity. It also does not provide guidance pertinent to off-task time and absenteeism, so I did utilize my experience to supplement where the DOT is silent regarding those issues.

(Tr. 79.) In the decision, the ALJ concluded that that there are jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity.

Plaintiff's challenge here turns on the questions of whether the VE provided information that *conflicted* with the Dictionary of Vocational Titles ("DOT"), rather than *supplemented* it, and about how the ALJ handled that situation. Plaintiff argues that the VE made statements which conflict with the DOT, and that the ALJ failed to handle this situation properly under Third Circuit law. Plaintiff has not, however, persuaded this Court that there was any error.

The hearing transcript shows that, in addition to the testimony already quoted, the VE responded to the hypothetical question at issue as follows:

> A: Actually, for all three positions, I believe you'd be looking at an erosion in the number of jobs. Now, I will say the DOT does not provide guidance pertinent to mention of the handling and fingering for one upper extremity, so I am supplementing the DOT and using my experience, and I do feel that some of these positions could be performed, but they're also maybe positions that would exceed that honestly, so I think we'd be looking at a 50% erosion to the number of jobs provided for these.

3

> Q: But there would still be work at the medium for an individual that can occasionally handle and finger, in your opinion?
>
> A: Well, but occasional with just one with the right upper extremity and I'm assuming there's no restrictions associate with the non-dominant left upper extremity?
>
> Q: That's correct.
>
> A: And we are not looking at with regards to the new jobs, all those in occasional restriction, I'll note that all three positions are rated at the frequent level for handling, but they're rated at the occasional level for fingering. And so it would really be the handling that I believe it would be the factor in this and erode the overall number of jobs since we're looking at a restriction associated with one upper extremity.

(Tr. 77-78.)   Plaintiff contends that the VE here did not supplement the DOT, but contradicted it.   Plaintiff's reading of the transcript is unpersuasive.   The VE explained that the DOT entries for all three jobs at issue required "handling" at the "frequent" level, but "fingering" at the "occasional" level.   According to the hypothetical, the worker "could occasionally handle and finger with the right dominant hand."   (Tr. 77.)   The VE explained that these DOT entries, as they are written, do not address a situation in which the right and left hands differ in their level of functional ability.   Because the hypothetical worker in this case, like Plaintiff, has a limitation to occasional handling with the right hand, and no limitation on the use of the left hand, the VE drew from his own experience and knowledge to supplement the guidance of the DOT.

This Court finds no contradiction here.   In actual fact, the DOT listings for the three occupations cited by the VE all contain these identical specifications:

> Handling: Frequently - Exists from 1/3 to 2/3 of the time
> Fingering: Occasionally - Exists up to 1/3 of the time

DICOT 361.687-018 (361.687-018 LAUNDRY LABORER), 1991 WL 672992 (4th ed. 1991);

4

DICOT 381.687-018 (381.687-018 CLEANER, INDUSTRIAL), 1991 WL 673258 (4th ed. 1991); DICOT 319.687-010 (319.687-010 COUNTER-SUPPLY WORKER), 1991 WL 672772 (4th ed. 1991).  The VE's statements about what the DOT listings specify were accurate.  None of these DOT listings contains anything that specifies whether the use of both hands is required: it is a simple truth that these particular listings do not address the circumstance of a worker with, for example, only one arm, or with limited use of one hand.  Nor do these listings state that two hands of equal functional ability are required.  The VE used his experience to adjust for the fact that, in this case, Plaintiff has limited use of one hand.  In so doing, the VE supplemented the information in the DOT.  Plaintiff has failed to point to anything the VE said that contradicted the information in the relevant DOT listings.

Even if the Court were to conclude that the VE's testimony somehow conflicted with the contents of the DOT – and it concludes the contrary –, Plaintiff would still fail to show reversible error.  The Third Circuit addressed this issue in Zirnsak v. Colvin, 777 F.3d 607, 616-17 (3d Cir. 2014) (citations omitted), setting forth this legal framework:

> The Commissioner can also rely on testimony from a VE to meet its step-five evidentiary burden. VEs are most commonly used to provide evidence at hearings before ALJs to resolve complex vocational issues.  However, a common issue— and the one argued by Zirnsak on appeal—arises when a VE's testimony conflicts with other sources of information relied on by the Commissioner, namely the DOT.  As a general rule, occupational evidence provided by a VE should be consistent with the occupational evidence presented in the DOT.  To ensure consistency, courts have imposed an obligation on ALJs to "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs . . . and information in the [DOT]."  Specifically, an ALJ is required to (1) ask, on the record, whether the VE's testimony is consistent with the DOT, (2) elicit a reasonable explanation where an inconsistency does appear, and (3) explain in its decision how the conflict was resolved.  An ALJ's failure to comply with these requirements may warrant remand in a particular case.  However, this Circuit has emphasized that the presence of inconsistencies does not mandate remand, so long as substantial evidence exists in other portions of the

5

record that can form an appropriate basis to support the result.

In the instant case, the ALJ complied with the requirements of Zirnsak: he asked the VE whether the testimony was consistent with the DOT, and the VE said that it was. The ALJ gave counsel for Plaintiff the opportunity to question the VE, and counsel declined. This Court finds no conflict between the DOT and the testimony of the VE, and no error at step five.

Plaintiff next argues that the RFC determination at step four is not supported by substantial evidence, but that is more a title on a subsection of the brief than a description of the arguments that follow. Under that subheading, Plaintiff presents three challenges to the RFC determination, based on arguments that the ALJ failed to sufficiently explain the decision. The problems with these challenges are several. First, they cite no Third Circuit law, although they are about subjects on which there is relevant Third Circuit law. Second, although each purports to challenge the RFC determination on the basis of the evidence, there is not one citation to any evidence in them. Instead, Plaintiff offers his interpretation of the evidence as if it were established fact. Third, they do not pose true Burnett challenges to the adequacy of an explanation: not one of them points to a statement that the ALJ made and raises the question of what it means. Nor do any of them mention the substantial evidence standard.

Moreover, these challenges suffer from two principal defects: 1) they fail to deal with the issue of the burden of proof at the first four steps of the sequential evaluation process; and 2) they fail to deal with the harmless error doctrine. As to the burden of proof, Plaintiff bears the burden in the first four steps of the analysis of demonstrating how his impairments, whether individually or in combination, amount to a qualifying disability. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

6

As to the harmless error doctrine, the Supreme Court explained its operation in a similar procedural context in Shinseki v. Sanders, 556 U.S. 396, 409 (2009), which concerned review of a governmental agency determination. The Court stated: "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Id. In such a case, "the claimant has the 'burden' of showing that an error was harmful." Id. at 410.

Plaintiff thus bears the burden, on appeal, of showing not merely that the Commissioner erred, but also that the error was harmful. At the first four steps, this requires that Plaintiff also show that, but for the error, he might have proven his disability. In other words, when appealing a decision at the first four steps, if Plaintiff cannot articulate the basis for a decision in his favor, based on the existing record, he is quite unlikely to show that an error was harmful.

Plaintiff's first challenge questions how Plaintiff could be found to be capable of work at the medium level given his limited use of his dominant hand. The ALJ, however, formulated an RFC that included both of these: Plaintiff can perform such work at the medium level of exertion as can be done with limited use of the right hand. At step five, the VE testified about jobs that could be performed at the medium level of exertion with limited use of the right hand. The ALJ provided a full, detailed explanation of the basis for this determination on pages 21 through 27. The Court has reviewed the ALJ's analysis and finds that it explains the decision clearly and that it is supported by substantial evidence.

Plaintiff's second and third challenges both question how the moderate mental limitations found in the analysis at step three could be consistent with the nonexertional limitations in the RFC. The ALJ provided a full, detailed explanation of the basis for this determination on pages 26 through 29. The Court has reviewed the ALJ's analysis and finds that it explains the

decision clearly and that it is supported by substantial evidence.

Plaintiff has failed to persuade this Court that the ALJ erred in his decision, or that he was harmed by any errors. This Court finds that the Commissioner's decision is supported by substantial evidence and is affirmed.

                                          s/ Stanley R. Chesler
                                  STANLEY R. CHESLER, U.S.D.J.

Dated: June 23, 2020